**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| G&K, P.A., an Arizona Professional Association,<br><br>Petitioner,<br><br>v.<br><br>James Willett, an individual; Yakima Compost Company, a Washington corporation; and The Yakima Company, Inc., a Washington corporation,<br><br>Respondents. | No. CV12-0373-PHX-DGC<br><br>**ORDER** |

On February 22, 2012, Petitioner Gallagher & Kennedy, P.A. ("G&K") petitioned this Court to compel arbitration under 9 U.S.C. § 4. Doc. 1. Respondents James Willett, Yakima Compost Company, and The Yakima Company, Inc. (collectively "Yakima") filed a response to the petition (Doc. 13) and G&K filed a reply (Doc. 22). On March 9, 2012, Yakima moved for leave to file a complaint. Doc. 14. That motion is fully briefed. Docs. 14, 21, 23. For the reasons that follow, the Court will grant the petition to compel arbitration and deny the motion for leave to file a complaint.

**I.    Background.**

This case involves a dispute over attorneys' fees. G&K represented Yakima in protracted litigation with La Paz County in La Paz County Superior Court over approximately eight years (the "La Paz case"). *County of La Paz v. Yakima Compost Company, Inc., et al.*, No. CV 2003-0119. Doc. 1, at 2. Yakima originally retained G&K on an hourly rate basis, but fell behind in its payments. *Id.*

In February 2009, the parties entered into a new fee agreement. G&K erased Yakima's past-due debt of more than $600,000 and agreed to "continue to represent" Yakima in the La Paz case on a 1/3 contingency basis. *Id.* Yakima had one year in which to convert back to an hourly rate engagement. *Id.* The fee agreement contained a binding arbitration clause: "If there arises any disagreement concerning the fees due hereunder, you and G&K agree to submit that disagreement to binding arbitration with the Fee Arbitration Committee of the State Bar of Arizona." Doc. 1-1, at 3 (Fuller Decl. ¶ 5); Doc. 1-1, at 9 (Ex. 1).

On June 22, 2010, Division One of the Arizona Court of Appeals affirmed the judgment that had been entered against La Paz County in the principal amount of $9,750,000.[1] Doc. 1, at 2. La Paz County then filed a petition for review, which the Arizona Supreme Court ultimately denied. *Id.* The mandate issued in late January 2011. *Id.*; Doc. 1-1, at 3 (Fuller Decl. ¶ 7). The judgment was uncollectible because La Paz County had no assets to pay any portion of the judgment. *Id.* As a result, the mandate spawned further litigation and motion practice in the trial court over mandamus and budgeting issues. *Id.* at 2-3.

Ultimately, the Arizona legislature passed a bill allowing La Paz County to raise additional tax revenue. *Id.* at 3; Doc. 1-1, at 3-4 (Fuller Decl. ¶ 8). The tax revenue supported a bond offering to pay Yakima's judgment on September 29, 2011. *Id.* By this point, G&K had invested more than $1.75 million of unpaid attorney time. *Id.*

On the same day that the judgment was paid, G&K received a faxed letter from John Casperson, an attorney in Washington State. *Id.*; Doc. 1-1, at 4 (Fuller Decl. ¶ 9). Mr. Casperson stated that he now represented Yakima and that his client wished to "re-open discussions concerning the revised fee agreement executed in February 2009." *Id.*; Doc. 1-1, at 11-18 (Ex. 2). Specifically, Mr. Casperson demanded that G&K voluntarily

---

[1] In its response to the petition to compel arbitration, Yakima alleges that it was awarded $14,182,142.99 on appeal, and that it recovered the full amount on September 29, 2011. Doc. 13, at 4.

- 2 -

reduce its fee by nearly $2 million. *Id.* He noted: "If this dispute is submitted for arbitration with the Arizona Bar Association – which is the dispute resolution method designated in the fee agreement itself – it is likely that G&K's fees will be significantly reduced, given the circumstances surrounding the renegotiated fee agreement and the relatively low risk taken by G&K in exchange for a full third of Yakima's recovery." Doc. 1-1, at 11 (Ex. 2).

G&K responded by inviting Yakima to initiate fee arbitration with the State Bar within ten days, and offered to cooperate with Yakima in scheduling a hearing. Doc. 1, at 3; Doc. 1-1, at 4 (Fuller Decl. ¶ 10). In an October 11, 2011 letter, Mr. Casperson stated that "Yakima rejects arbitration" and indicated that it intended to file a court action with full discovery. *Id.*; Doc. 1-1, at 4 (Fuller Decl. ¶ 11).

Meanwhile, G&K wired Yakima's funds from the judgment in the La Paz case, mistakenly wiring $500,000 more than Yakima was due under the agreement. Doc. 1, at 3-4; Doc. 1-1, at 4 (Fuller Decl. ¶ 12). The mistake resulted from failure to take into account a previous $500,000 payment Yakima had received from La Paz County. G&K notified Yakima of the error, but Yakima refused to refund the overpayment. *Id.*

**II.    Legal Standard.**

The FAA provides that private agreements to arbitrate disputes are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. It also includes a savings clause that allows such agreements to be invalidated only "upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d

716, 719-20 (9th Cir. 1999)). Because the parties here do not dispute that the claim at issue – the fees due to G&K – falls within the scope of the arbitration clause (Doc. 13, at 5-6), the Court must decide only whether the agreement to arbitrate is valid.[2]

### III. Arbitrability.[3]

Challenges to arbitration agreements fall into two categories: (1) those "challeng[ing] specifically the validity of the agreement to arbitrate," and (2) those "challeng[ing] the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). When a challenge is to the validity of the arbitration provision, courts decide the validity issue. But when the "crux of the complaint is that the contract as a whole (including its arbitration provision)" is invalid, the arbitrator decides the validity question. *Id.* *Buckeye* held that "because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court." *Id.* at 446.

In *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996 (9th Cir. 2010), the Ninth Circuit explained that a court decides the validity question "when a plaintiff argues that an arbitration clause, *standing alone*, is unenforceable . . . *for reasons independent of any reasons the remainder of the contract might be invalid.*" *Id.* at 1000 (emphasis added). *Bridge Fund* used alternative language, explaining that

---

[2] The arbitrability of a particular dispute is a threshold issue to be decided by the courts, *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1268 (9th Cir. 2006), unless that issue is explicitly assigned to the arbitrator, *Rent-A-Ctr., W., Inc. v. Jackson*, 130 S. Ct. 2772, 2775 (2010) (holding that arbitrability is a question for the arbitrator "where the agreement explicitly assigns that decision to the arbitrator"). Here, the arbitration provision does not expressly assign the issue of arbitrability to the arbitrator.

[3] Yakima initially argued that G&K violated the FAA notice requirement because it "failed to provide five days' prior written notice" to Yakima. Doc. 13, at 4. Yakima has since conceded that the notice requirement has been satisfied. Doc. 23, at 2.

- 4 -

courts decide the validity question when the arbitration clause's validity "*is an entirely distinct issue* from the contract claims in the case." *Id.* at 1001-02 (emphasis added). Conversely, if "[t]he crux of the complaint . . . makes clear that the challenge to the arbitration clause *is the same challenge* that is being made to the entire contract," validity is decided by the arbitrator. *Id.* at 1001 (emphasis added); *see also Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1271 (9th Cir. 2006) ("[W]here . . . there are *separate and independent* claims specifically challenging enforcement of the arbitration provision, then the federal court will proceed to consider the challenge to arbitrability of the dispute.") (emphasis added).

Applying this language, the Court must determine whether Yakima's challenge to the arbitration clause in the fee agreement is based on reasons independent of Yakima's reasons for claiming that the entire agreement as invalid – whether the challenge to the arbitration clause is an entirely distinct issue from the other contact claims in this case. If so, the Court must decide the clause's validity. But if the challenge to the arbitration clause is the same challenge that is being made to the entire contract, validity must be decided by the arbitrator.

Yakima acknowledges that this case must be "submitted to arbitration unless there is a challenge to the arbitration provision which is *separate and distinct* from any challenge to the underlying contract." Doc. 13, at 7 (quoting *Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404, 1410 (9th Cir. 1989)). Yakima argues, however, that the arbitration provision need not be challenged on different substantive grounds than the underlying contract. Doc. 23, at 4. Yakima relies on *WB, the Building Company, LLC v. El Destino LP*, 257 P.3d 1182 (Ariz. App. 2011). *See* Doc. 13, at 7; Doc. 23, at 4-5. In *WB*, appellants argued that appellees' challenge related only to the underlying contract and not to the arbitration agreement itself because appellees challenged both the contract and the arbitration agreement on the basis of failure to comply with specific statutes. *See WB*, 257 P.3d at 1187. The Arizona Court of Appeals concluded that "case law suggests that the same grounds may be used to challenge both an arbitration agreement and the

underlying contract so long as an arbitration agreement itself is separately and distinctly challenged on those grounds." *Id.* Based on *WB*, Yakima argues that it has "undoubtedly alleged two separate challenges" by claiming that G&K's conduct "rendered the contract and the arbitration provision void," and that this alone is enough to warrant judicial review of the arbitration clause. Doc. 23, at 5.

State law is used to determine which contracts are binding and enforceable under the FAA "*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally," *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009) (quoting *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987)), but federal substantive law governs questions of arbitrability, *see Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F.2d 282, 285 (9th Cir. 1988) ("The [FAA] creates 'a body of federal substantive law of arbitrability,' enforceable in both state and federal courts and preempting any state laws or policies to the contrary.") (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), *overruled on other grounds by Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 941-42 (9th Cir. 2001); *Art Mktg. Grp. v. Poor & Co.*, No. CV 04-2764 PHX RCB, 2006 WL 1081064, at *3 (D. Ariz. April 25, 2006). To the extent Yakima relies on *WB* to suggest that the Court must determine the validity of an arbitration provision even if its validity is challenged on the same basis as the contract as a whole, such a position is at odds with the Ninth Circuit's statements in *Bridge Fund*. As noted above, under *Bridge Fund*, a court decides validity only when the arbitration clause is challenged "for reasons independent of any reasons the remainder of the contract might be invalid." 622 F.3d at 1000; *see also id*. at 1001 (explaining that "[b]ecause the material question is whether the challenge to the arbitration provision is severable from the challenge to the contract as a whole, . . . the inclusion of, or failure to include, a specific challenge in the complaint is not determinative. What matters is the *substantive basis* of the challenge.") (internal citations omitted and emphasis added). The Court therefore will consider the substantive basis of Yakima's assertions to determine whether it has made a separate and distinct challenge to the validity of the arbitration

clause.

Yakima's proposed complaint clearly asserts the invalidity of the fee agreement as a whole. The complaint alleges ten claims: (1) "willful and intentional breach of fiduciary duty," (2) "negligent breach of fiduciary duty," (3) "bad faith breach of contract," (4) "the contract is unconscionable and therefore unenforceable," (5) "the contract is unenforceable due to duress and/or undue influence," (6) conversion, (7) "the contract is unenforceable for fraud and/or misrepresentation," (8) intentional misrepresentation, (9) negligent misrepresentation, and (10) unjust enrichment. *See* Doc. 14-1. The claims focused on contract invalidity – Claims 4, 5, and 7 – all seek to invalidate the entire contingency fee agreement, not just the arbitration clause.

The fifth claim – duress and/or undue influence – concerns the entire agreement: "G&K waited until it was in a position of power and when Yakima felt vulnerable to insist upon a *contingent fee arrangement*"; "G&K threatened to withdraw as counsel if Yakima did not agree to the *unreasonable fees* sought by G&K"; "G&K failed to educate Yakima on the meaning of the *Contingency Fee Agreement* and how traditional contingency fee agreements are used." Doc. 14-1, at 11-12 (emphasis added). None of these assertions relates specifically to the arbitration clause. Claim Five concludes with: "Because the *Contingency Fee Agreement* was entered under duress and/or undue influence, it is not enforceable." *Id.* at 12 (emphasis added).

Claim 4 also alleges that "[t]he Contingent Fee Agreement is unconscionable." *Id.* at 19. Claim 7 alleges that "the Contingent Fee Agreement and its arbitration provision was obtained through fraud/misrepresentations" (*id.* at 13), but the 15 paragraphs that follow in Claim 7 never mention the arbitration clause. The Court accordingly concludes that the crux of Yakima's complaint is the invalidity of the entire fee agreement. Under the cases discussed above, the validity of such a claim must be decided by the arbitrator, not the Court.

*Bridge Fund* also made clear that a separate and distinct challenge to an arbitration provision need not be contained in the challenging party's complaint; it may be contained

in the party's response to the motion to compel arbitration. 622 F.3d at 1001-02. As a result, the Court must also consider arguments contained in Yakima's response to G&K's petition to compel arbitration.

Yakima's response asserts that the "agreement to arbitrate was obtained through duress." Doc. 13, at 7. Yakima alleges that G&K "strong-armed a client to change its fee agreement from hourly to contingent mid-stream in litigation, *after* the law firm assisted the client in obtaining a judgment of $9,200,000," and that G&K "inserted an arbitration provision in that unreasonable contingency fee agreement." *Id.* at 1 (emphasis in original). Yakima claims that "[t]he Contingency Fee Agreement unreasonably increased [Yakima's] fees," G&K "misrepresented the reasonableness of the fee they sought," "[t]he arbitration clause in the Contingency Fee Agreement was not included in the prior fee agreement," Yakima "did not understand what rights they were giving up when they signed the arbitration agreement," G&K "breached the ethical duty to advise [Yakima] to seek independent counsel before they signed the agreement," and Yakima was "under the impression that the only practical way to see the judgment converted to cash was with the assistance of [G&K]." *Id.* at 8-9. These arguments – the unreasonableness of the arbitration clause and its procurement through duress and misrepresentations – are the same arguments made by Yakima against the entire agreement. Claim 4 of Yakima's proposed complaint alleges unconscionability, Claim 5 alleges duress and undue influence, and Claim 7 alleges fraud and misrepresentation. Doc. 14-1 at 8-15. Yakima does not present a basis for invalidating the arbitration clause that is "independent of any reasons the remainder of the contract might be invalid," or "an entirely distinct issue from the contract claims in the case." *Bridge Fund*, 622 F.3d at 1001-02. Rather, "the challenge to the arbitration clause is the same challenge that is being made to the entire contract." *Id.* at 1001. As a result, Yakima's challenge to the arbitration clause must be decided by the arbitrator. *Id.* at 446; *Nagrampa*, 469 F.3d at 1277. The Court will accordingly compel arbitration of the parties' dispute in this case, consistent with the mandatory requirements of the FAA.

**IT IS ORDERED:**

1. The petition to compel arbitration (Doc. 1) is **granted.** Respondents shall arbitrate their dispute with Petitioner as required in the fee agreement.

2. Yakima's motion for leave to file a complaint (Doc. 14) is **denied**.

3. This action is **dismissed**. The clerk is directed to terminate this action.

Dated this 24th day of April, 2012.

*Daniel G. Campbell*
David G. Campbell
United States District Judge